**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TOURAJ ZAKERI,

   *Plaintiff*,

  v.          Civil Action No. 25-3222 (TJK)

MARCO A. RUBIO *et al.*,

   *Defendants*.

## MEMORANDUM

In August 2022, Touraj Zakeri applied for a tourist visa to visit the United States. Two months later, he interviewed with a consular officer. His application was then refused and placed in administrative processing. About a year after his interview, he sued several U.S. Government officials, alleging that he had waited too long for an adjudication. The Court dismissed the case in July 2024 because he lacked standing to sue certain defendants and for failure to state a claim. He sat for an additional interview in November 2024. And in September 2025, Zakeri filed this lawsuit, in which he brings the same legal claims related to the processing of his visa. Defendants move to dismiss again for several reasons, including that his claims are barred by res judicata. For the reasons explained below, the Court will dismiss all his claims again, because he lacks standing to sue the Secretary of State and he has failed to state a claim. Thus, the Court will grant Defendants' motion and dismiss the case.

## I. Background

Zakeri is an Iranian-born Canadian citizen. ECF No. 1 ¶ 9. In 2022, he submitted a Form DS-160 to apply for a tourist visa to enter the United States. *Id.* ¶ 1. In June 2022, he tried to board a flight from Calgary to the United States. *Id.* ¶ 13. But U.S. Customs and Border Protection

told him that he needed to provide evidence that he never served in the Islamic Revolutionary Guard Corps. *Id.* Several weeks later, Zakeri returned to the airport with that evidence. *Id.* ¶ 14. After an interview, CBP told Zakeri that he was inadmissible to the United States as "an intending immigrant without an immigrant visa."[1] *Id.* ¶ 16. At that point, Zakeri decided to apply for a tourist visa.[2] *Id.* ¶ 17. He submitted his Form DS-160 on August 24, 2022. ECF No. 1 ¶ 18. After a round of consular interviews in Canada, and his submission of "voluminous documentation," Zakeri's application was refused and placed in administrative processing by the end of 2023. *Id.* ¶19.

In October 2023, Zakeri sued then-Secretary of State Anthony Blinken, then-Attorney General Merrick Garland, and then-Consul General Holly Waeger Monster to compel further adjudication of his visa application under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1). *See Zakeri v. Blinken*, No. 23-cv-3162 (TJK), 2024 WL 3273418, (D.D.C. July 2, 2024) ("*Zakeri I*"). In July 2024, this Court dismissed

---

[1] Zakeri was apparently found inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *See* ECF No. 1-1 at 1 ("Subject appears to be inadmissible 212a7A1 Immigrant without an immigrant visa."). That statute reads: "Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

[2] To obtain a tourist visa, an alien must show that he (1) intends to leave the United States at the end of his temporary stay, (2) has permission to enter a foreign country at the end of his temporary stay, and (3) has adequate financial arrangements to allow him to carry out the purpose of the visit to and departure from the United States. *See* 22 C.F.R. § 41.31(a). The alien must first submit an online Nonimmigrant Visa Application, or Form DS-160, and then appear before a consular officer for an interview. 22 C.F.R. § 41.103. At the interview, the consular officer determines "the proper nonimmigrant classification" and the "alien's eligibility to receive a visa." 22 C.F.R. § 41.102(a). The alien bears the burden of establishing eligibility. 8 U.S.C. § 1361.

Zakeri's suit for lack of subject-matter jurisdiction, because he lacked standing to sue the Secretary of State and the Attorney General, and for failure to state a claim upon which the Court could grant relief. *Id.* at \*2–6. In November 2024, Zakeri sat for an additional consular interview, and again provided documents in support of his eligibility for the visa. ECF No. 1 ¶ 20.

Undeterred, Zakeri filed this suit in September 2025 with a complaint that contains the same claims as his first and targets the same defendants' successors-in-office, excluding the Attorney General. *Compare* ECF No. 1 ¶¶ 10–11, 22–38, *with Zakeri I*, No. 23-cv-3162 (TJK), ECF No. 1 ("Prior Complaint") ¶¶ 9–10, 21–37. Defendants—Secretary of State Marco Rubio and Consul General Emily Fleckner—now move to dismiss this second suit. *See* ECF No. 9.

## II.    Legal Standards

"[F]ederal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), confined by the Constitution to those cases and controversies listed in Article III. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). "[T]he first and fundamental question is that of jurisdiction," and "the court is bound to ask and answer [the jurisdictional question] for itself." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). That is, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists" over each claim, even if neither party has raised the issue. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). And when it lacks subject-matter jurisdiction over a claim, the Court must dismiss it. Fed. R. Civ. P. 12(h)(3).

Further, even when the Court possesses subject-matter jurisdiction over the case, a plaintiff's complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). To be plausible, the complaint must "contain[] factual allegations that, if proved, would allow the court to draw the reasonable inference that the defendant is liable for

3

the misconduct alleged." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quotation omitted).  But "a complaint that discloses all necessary elements of [claim] preclusion"—also known as res judicata—"is ripe for dismissal." *Steele v. United States*, 144 F.4th 316, 326 (D.C. Cir. 2025).

### III.    Analysis

In their motion to dismiss, Defendants argue that Zakeri's claims are precluded under the doctrine of res judicata because they have already been brought and rejected once before.  ECF No. 9 at 10–11.  In response, Zakeri contends that res judicata does not apply because intervening events—an additional consular interview and the general passage of time—have changed the nature of his claim.  *See* ECF No. 10 at 2–3.  Because enough time has passed, and Zakeri has since sat for another consular interview, the Court declines to dismiss his claims on the basis of res judicata.[3]  But it *will* dismiss them for the same reason it did before: he still fails to state a claim.  Also as before, the Court must first address a problem neither party has raised: Zakeri lacks standing to bring his claims against the Secretary of State.

### A.    Zakeri Lacks Standing to Sue the Secretary of State

A federal court lacks subject-matter jurisdiction when a plaintiff fails to establish standing to litigate their claims.  *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("[T]he defect of standing is a defect in subject matter jurisdiction.").  "The plaintiff, as the party invoking federal

---

[3] A subsequent suit is barred by the doctrine of res judicata if there has been a prior suit "(1) involving the same claims or cause of action, (2) between the same parties or their privies" that ended with "(3) a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. U.S.*, 471 F.3d 186, 192 (D.C. Cir. 2006).  In the District of Columbia, two suits are considered to share the same cause of action when "they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)).  The Court finds that the passage of time and Zakeri's second consular interview in November 2024, which—as explained below—impacts the time from when the agency's delay is measured, is enough to conclude that res judicata does not apply.  That said, even if it *did* apply, the outcome would be the same: dismissal with prejudice.

jurisdiction, bears the burden of establishing [the three] elements" of standing: that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Additionally, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quotation omitted).

The Court finds that Zakeri lacks standing to bring his claims against the Secretary because he fails to establish the second and third prongs of standing, causation and redressability. *See Zakeri I*, 2024 WL 3273418, at \*2–\*3. The Immigration and Nationality Act "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)); *see also* 8 USCA § 1101 *et seq.* "Because only the consular offices, and not the Department of State, can grant [Zakeri's] application . . . [he] cannot show that his injury is redressable by the [Secretary]." *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 75 (D.D.C. 2022) (cleaned up). There is thus no redress the Court could order against the Secretary, nor could the Court find Zakeri's injury to be caused by the Secretary's conduct. Without two of the three elements that comprise the "irreducible constitutional minimum of standing," the Court must dismiss Zakeri's claims against the Secretary. *Lujan*, 504 U.S. at 560.[4]

---

[4] Courts in this District have split on the scope of the Secretary's control over consular officers' visa adjudications. A few courts have held that 8 U.S.C. § 1104(a) allows the Secretary to direct consular officers to make visa determinations "within a reasonable time." *E.g.*, *Janay v. Blinken*, 743 F. Supp. 3d 96, 105–10 (D.D.C. 2024). For reasons already expressed in an earlier

This analysis, however, does not extend to the Consul General. Zakeri rightly—for the second time—notes the Consul General's official responsibility to oversee "all consular activities of the [Calgary] Consulate," including its officers' adjudications of Zakeri's visa application. ECF No. 1 ¶ 11. And the Consul General "appears to qualify as a commissioned consular officer with authority over visa adjudications" such that an order directed at the Consul General could redress Zakeri's injuries. *Liew v. Sanders*, 737 F. Supp. 3d 30, 36 (D.D.C. 2024) (cleaned up); *see also Zakeri I*, 2024 WL 3273418, at *3.

## B. Zakeri Has Failed to State a Claim Against the Consul General for Unreasonable Delay Under the Mandamus Act or the APA

Though the Court has jurisdiction to address it, Zakeri's claim against the Consul General fails on its merits. The Court's analysis remains in large part the same as before. Zakeri brings his unreasonable delay claims under the Mandamus Act, 28 U.S.C. § 1361, and § 706(1) of the APA. *See* ECF No. 1 ¶¶ 22–38. The Court applies the same legal standard to these claims. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). In essence, the Court must determine "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.* 531 F.3d 849, 855 (D.C. Cir. 2008) (citation omitted).

To help guide this inquiry, the D.C. Circuit has laid out a six-factor test:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

---

opinion, this Court disagrees. *See Musaleev v. Bitter*, No. 24-cv-1100 (TJK), 2025 WL 315148, at *4 (D.D.C. Jan. 28, 2025).

(5) the court should also take into account the nature and extent of the interests prejudiced by delay;

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that the agency action is unreasonably delayed.

*Telecomms. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up); *see also Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors."). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). Courts often address the factors by addressing them under "four basic inquiries." *Rashidi v. U.S. Dep't of State*, No. 23-cv-1569 (JEB), 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023).

"First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)?  Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)?  Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)?  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?"

*Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up).

### 1.    TRAC Factors 1 and 2

The first two TRAC factors are typically considered together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  And the first is often considered the "most important." *In re Core Commc'ns, Inc.,* 531 F.3d at 855.  These factors evaluate "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. 3d at 153–54.  And because there is no "set timeline, the Court looks to case law for

guidance." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021).[5]  In *Da Costa*, the D.C. Circuit found a four-and-a-half-year delay not unreasonable.  80 F.4th at 342.  And "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *5 (D.D.C. Feb. 15, 2024) (citation omitted).  Further, "delays of around two years are usually considered reasonable." *Noori v. Blinken*, No. 23-cv-1463 (TJK), 2024 WL 939990, at *3 (D.D.C. Mar. 5, 2024); *see also Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law.").

Because "[c]ourts measure the period of delay from the last government action to the issuance of the opinion," *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sep. 8, 2022), and Zakeri's most recent consular interview took place in November 2024, the delay here comes to about 18 months, a few months shorter than when the Court resolved his prior case.  As reflected above, that delay falls well within what courts in this jurisdiction have consistently determined not to be unreasonable.[6]  That is so even considering delays only in the nonimmigrant visa context.  *See Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (holding that a 21-month delay in adjudicating a nonimmigrant visa

---

[5] Zakeri argues that 8 U.S.C. § 1571(b) supplies the relevant timetable.  *See* ECF No. 1 ¶ 34.  Not so.  That statute provides: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  By its plain text, § 1571 applies to the Immigration and Naturalization Service, not the State Department, and it governs 'immigration benefit application[s],' not the *non*immigrant visa application at issue here." *Ahmadi v. Scharpf*, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 n.9 (D.D.C. Feb. 12, 2024) (emphasis in original).

[6] Even if Zakeri's most recent consular interview did not reset the time from when the delay is measured, the delay would amount to about 43 months—a little more than three-and-a-half years—which under the caselaw cited above would still not be unreasonable.

was not unreasonable).[7] For these reasons, factors one and two, taken together, favor Defendants.

### 2.    *TRAC* Factor 4

The fourth factor "carries the greatest weight in many cases." *Milligan*, 502 F. Supp. 3d at 319. It examines the effect of expediting Zakeri's application on the agency's other competing priorities. *TRAC*, 750 F.2d at 80. Courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). In other words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "'no net gain'" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Lab'ys, Inc.*, 930 F.2d at 75). That is exactly would happen here if Zakeri receives his requested relief. Ordering consular officials to process his application on his preferred timeline would "necessarily require [the agency] to prioritize [his] application[] 'at the expense of other similarly situated applicants.'" *Rashidi*, 2023 WL 6460030, at *5 (quoting *Da Costa*, 80 F.4th at 344). And this "would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). Factor four thus heavily favors Defendants.

### 3.    *TRAC* Factors 3 and 5

Factors three and five involve "the interests prejudiced by delay," including possible effects on "human health and welfare." *TRAC*, 750 F.2d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem). Zakeri alleges

---

[7] Still, the Court may consider caselaw addressing delays in adjudicating nonimmigrant visa applications, like the one here, as well as immigrant visa applications. *See Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (declining to distinguish between treatment of immigrant and nonimmigrant visa applications).

9

having suffered "immense" consequences.  ECF No. 1 ¶ 35.  He "has struggled with his business . . . and this has caused him a great amount of stress and anxiety."  *Id.*  The Court is sympathetic to these hardships.  Yet Zakeri is no different than many others in similar circumstances.  *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) ("While the Court does not doubt that [the plaintiff] has an interest in prompt adjudication, so too do many others facing similar circumstances.").  "Thus, these factors largely do not weigh in [Zakeri's] favor because there is no reason why [his] private interests in 'health and welfare' deserve special treatment relative to other visa applicants' interest in the same."  *Noori*, 2024 WL 939990, at *4.  And even if they do weigh in his favor to some extent, it is clear "[t]hey do not 'overcome the other factors that weigh strongly in the Government's favor.'"  *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

### 3.    *TRAC* Factor 6

Factor six insists that a plaintiff need not show bad faith or impropriety on the part of the agency to prevail on an unreasonable delay claim.  Zakeri asserts that "the U.S. government has already issued an absurd finding of inadmissibility due to immigrant intent" and that this finding "is clearly a fig leaf to cover a discriminatory decision to not let someone of Iranian descent enter" the United States.  ECF No. 1 ¶ 37.  But he alleges no specific facts in support of these accusations.  And in any event, he does not challenge the agency's inadmissibility finding, but the delay in completing further administrative processing.  So the Court assesses this factor as neutral.  And even if it did weigh in his favor, it, too, would "not 'overcome the other factors that weigh strongly in the Government's favor.'"  *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

\*    \*    \*

The Court takes notice of the "troubling backlog of petitions waiting for . . . adjudication."  *Da Costa*, 80 F.4th at 344.  But after weighing all the TRAC factors, the Court has little difficulty

10

concluding that Zakeri has not stated a claim for unreasonable delay of adjudication of his visa application.  In fact—unfortunately—his wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district."  *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021).  In the end, delays "stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities."  *Milligan*, 502 F. Supp. 3d at 319 (cleaned up).  And Zakeri offers no reason for the Court to bump him to the front of the line.

## IV.    Conclusion

For all the above reasons, the Court will dismiss all of Zakeri's claims and the case.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 28, 2026